IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARRELL DEWAYNE BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 99-PWG-3246-S |
| | ) |
| HEALTHCARE RECOVERIES, INC., and | ) |
| UNITED HEALTHCARE OF ALABAMA, INC., | ) |
| | ) |
| Defendants. | ) |

**ENTERED**
**JAN 1 0 2002**

## MEMORANDUM OF OPINION

Plaintiff filed this purported class action complaint on October 20, 1999, alleging state law causes of action for unjust enrichment, breach of contract, money had and received, bad faith denial of an insurance claim, and breach of fiduciary duty and a federal law cause of action under RICO (18 U.S.C. § 1962(a)). Plaintiff alleges that United Healthcare of Alabama, Inc. ("United) and Healthcare Recoveries, Inc. (HRI) sought from plaintiff, through subrogation, reimbursement of medical claims in amounts that exceeded the amounts United paid to satisfy claims to medical providers. Plaintiff also alleges that United wrongfully denied certain claims for medical treatment received by plaintiff in the emergency room.

On December 13, 1999 defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Document #2). December 30, 1999 plaintiff filed a motion for leave to amend the complaint, which this court granted by order dated January 6, 2000. Plaintiff's amended complaint adds a RICO claim and a prayer for declaratory judgment.

This action is before the magistrate judge on defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment pursuant to the written consent of the parties to the exercise of jurisdiction by the magistrate judge. 28 U.S.C. § 636(c) and LR 73.2.

44

The following facts are undisputed, Darrell D. Baker was a participant in a group health benefits plan (the "Plan") sponsored by his employer, Peak, Inc., d/b/a Express Oil Change ("Express Oil"). (Dorsey Affidavit, p.2). Express Oil is engaged in interstate commerce. The "health insurance contract" (the "Contract") referred to in the complaint is the Plan. *Id*. The Plan provides medical, surgical, and other health benefits to participants and beneficiaries. *Id*.

United serves as the insurer and claims administrator for the Plan. (Dorsey Affidavit, ¶ 3). In its capacity as claims administrator, it interprets the terms of the Plan and determines whether claims are payable, hence United is a fiduciary to the Plan pursuant to 29 U.S.C. § 1002(21)(A). (*Id*. See also, the Group Policy and Certificate of Coverage under which Mr. Baker was covered under the Plan, attached as Exhibit A to the Dorsey Affidavit).

The Plan contains two different types of coverage: (1) coverage through United HealthCare of Alabama, Inc.'s health maintenance organization ("HMO") ("Open Access" Coverage)1 and (2) standard indemnity insurance coverage ("United HealthCare Plus"), which is underwritten by United HealthCare Insurance Company, for medical services rendered by providers who do not participate in the HMO. (Supplemental Declaration of Deidra Dorsey, ¶ 2). The Plan document contains a Group Policy and Certificate of Coverage for each respective type of coverage. *Id*.

The two types of coverage available under the Plan are described as follows in the Certificate of Medical Insurance for United HealthCare Plus Benefits:

> **UNITED HEALTHCARE PLUS COVERAGE**.
> As a Member of United HealthCare Plus, you are eligible for two types of coverage. The Company [United HealthCare Insurance Company] provides **medical insurance benefits** for Health Services received through a non-participating Physician. When you use your medical insurance benefits, you

2

> pay an Annual Deductible and a greater share of the Health Services. Preventative health care is generally not covered.
>
> United HealthCare of Alabama, Inc. ("United") provides **HMO benefits** when you receive Health Services through your Primary Care Physician and participating providers. Preventative health care as well as treatment of a Sickness or Injury are covered. When you use your HMO benefits, there is no deductible to satisfy and you pay less out of pocket expenses. Your HMO benefits are described in the Group Health Maintenance Certificate issued by United.

("Plus" Certificate of Coverage, Exhibit A, at United-064) (emphasis in original); *(see also* Supplemental Dorsey Declaration at ¶ 3).

All claims for medical services provided to Mr. Baker following his automobile accident in October 1998 were from participating providers and considered under the Plan's HMO coverage as described in the Certificate of Coverage titled "Open Access Certificate of Coverage." (Dorsey Supplemental Declaration, ¶ 4; *see also* Open Access Certificate of Coverage, Exhibit A at United-012 through -054). In fact, all claims for medical services rendered to Mr. Baker under the Plan and received by United were provided by participating providers under the Plan's HMO coverage. (Dorsey Supplemental Declaration, ¶ 4).

The Open Access Certificate of Coverage for HMO benefits provides the following regarding subrogation:

> **Section 7.8 Subrogation and Reimbursement**.
> Subrogation is the substitution of one person or entity in the place of another with reference to a lawful claim, demand, or right. The PLAN shall be subrogated to and shall succeed to all rights of recovery, under any legal theory of any type, **for the reasonable value of services and benefits** provided by the PLAN to any Covered Person....

3

(Open Access Certificate of Coverage, Exhibit A at United-031, § 7.8, p. 13) (emphasis added); *see also* Supplemental Dorsey Declaration at ¶ 5).

The Open Access Certificate of Coverage for HMO benefits outlines grievance procedures available to Plan participants in Section 5. (Dorsey Affidavit, § 4 and HMO Open Access Certificate of Coverage, Exhibit A at United -026 through -027).

United has never received either an informal or a formal grievance from Mr. Baker relating to the claims made the basis of his lawsuit. (Dorsey Affidavit, ¶ 5 and Open Access Certificate of Coverage, Exhibit A at United -026 through -027) (explaining grievance procedures).

United states that it is prepared to conduct an administrative appeal of Mr. Baker's claim. (Dorsey Affidavit, ¶ 6).

Plaintiff maintains that material facts are in dispute related to (1) whether the defendants collected the "reasonable value" of medical services based on its own actuarial determinations, and (2) whether the actions of HRI exhaust administrative remedies. (Plaintiff's opposition, p. 4).

I. <u>Whether plaintiff's RICO claims are barred by the McCarran-Ferguson Act.</u>

The McCarran-Ferguson Act provides in pertinent part:

> No Act of Congress shall be construed to invalidate, impair or supercede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012(b). The McCarran-Ferguson Act therefore bars claims arising under a federal statute if:

    (1)    the statute does not specifically relate to the business of insurance;

4

    (2) a state statute has been enacted for the purpose of regulating the business of insurance; and

    (3) the federal statute would invalidate, impair, or supercede the state statute.

*Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1305 (8th Cir. 1997) (holding that McCarran-Ferguson Act barred plaintiff's RICO claims); *accord Humana, Inc. v. Forsyth*, 525 U.S. 299 (1999).

  The Supreme Court has held that "RICO is not a law that 'specifically relates to the business of insurance.'" *Humana*, 119 S.Ct. at 716. The first requirement is thus satisfied. Because the conduct alleged as a basis for plaintiff's RICO claims is subject to regulation by the State of Alabama as part of its regulation of the business of insurance, the second requirement is also met. The only point of contention is the third requirement–that is, whether RICO would invalidate, impair, or supercede Alabama's regulation of the business of insurance.

  In *Humana, Inc. v. Forsyth*, 525 U.S. 299 (1999), the Supreme Court held that private RICO claims based on conduct prohibited by Nevada's Unfair Insurance Practices Act would not impair that state's regulation of insurance, because the Nevada statute authorizes a private right of action, as does RICO. *Humana*, 119 S.Ct. at 718. To the contrary, the Court thought that RICO claims would compliment Nevada's regulatory scheme and its available common-law remedies – which included punitive damages without trebling limits – as set forth in the state's statutory regulation of insurers. *Id.* at 719.

  The question before this court, which was left unresolved in *Humana,* is whether RICO claims would impair a state's regulation of insurance when enforcement of that state's regulatory scheme is committed solely to state officials with no authority for a private right of action. In *LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640, 643 (8th Cir. 1999) the "decisive

5

question [on appeal was] whether RICO's application ... would invalidate, impair, or supercede Minnesota's insurance laws." *Id.* at 643. The Eighth Circuit held that "the answer to that question is yes, and [plaintiff's] arguments to the contrary are foreclosed by this Court's holding in *Doe* and by the United States Supreme Court's recent decision in *Humana*." *Id.* The *LaBarre* court explained that the alleged conduct at issue was prohibited by Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 72A.20 which "permits only administrative recourse ... and, unlike RICO, does not provide a private cause of action ...." *Id.* Accordingly, the third McCarran-Ferguson requirement was satisfied, "because 'the extraordinary remedies of RICO would frustrate, and perhaps even supplant, Minnesota's carefully developed scheme of regulation.'" *Id., see also American Chiropractic Association v. Trigon HealthCare, Inc.*, 151 F. Supp.2d 273 (N.D. Va. 2001) (McCarran-Ferguson Act precluded RICO action because no private cause of action in Virginia); *In re Managed Care Litigation*, 150 F. Supp.2d 1330 (S.D. Fla. 2001) ("Plaintiff cannot enjoy treble damages authorized by RICO" because no private cause of action existed under California law). *But see Bancoklahoma Mortgage v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999) ("Although Missouri does not provide a private cause of action under its Unfair Trade Practice Act, it does allow causes of action under other state law.... the McCarran-Ferguson Act does not bar BOMC's RICO claims.")

The conduct of which plaintiff complains is governed by Alabama's Insurance Trade Practices Law, *Alabama Code* § § 27-12-1 through 27-12-24, and Alabama's regulation of Health Maintenance Organizations, *Alabama Code* § § 27-21A-1 through 27-21A-32 (specifically § 27-21A-13, which details prohibited practices, and § 27-21A-30, which allows health maintenance organizations to obtain through subrogation the reasonable value of benefits of payments provided). Enforcement of the Alabama Trade Practices Law and the Alabama Health Maintenance

Organization laws are committed to the Alabama Insurance Commissioner, who may impose monetary penalties, issue cease and desist orders, and suspend or revoke an insurer's license or certificate of authority in administrative proceedings. *See Alabama Code* § § 27-12-18 through 27-12-21; *Alabama Code* § § 27-21A-16 through 27-21A-22. Unlike its Nevada counterpart construed by the court in *Humana* the Alabama statute does not authorize a private cause of action. *Farlow v. Union Cent. Life. Ins. Co.*, 874 F.2d 791 (11th Cir. 1989) (no private cause of action under Alabama's "Twisting Statute," § 27-12-16); *see also Alabama Code* § 27-21A-13(b) (construing the requirements of the Alabama Trade Practices Law, § § 27-12-1, *et seq.*, to apply to health maintenance organizations under § § 27-21A-1, *et seq.*).

Because Alabama does not provide a private cause of action under the Alabama Trade Practices Law and Alabama Health Maintenance Organization laws, the McCarran-Ferguson Act precludes a RICO action.

II.   Whether plaintiff's state law claims are preempted by ERISA.

Plaintiff asserts state law claims for unjust enrichment, breach of contract, money had and received, breach of fiduciary duty and bad faith. State laws that "relate to" employee benefit plans are preempted by ERISA. 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (fraud, breach of fiduciary duty, and breach of contract related to improper processing of benefit claims preempted). ERISA provides, with certain narrow exceptions, that the rights, regulations and remedies afforded by that statute "supersede any and all state laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a).

The preemption provision of ERISA is extremely broad. *See e.g. Pilot Life*, 481 U.S. at 45-46; *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983). A state law "'relates to' a benefit plan ... if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96-97. Because

7

Congress used the word "relates to" in its broad sense, the Supreme Court has "emphasized that the preemption clause is not limited to 'state law specifically designed to affect employee benefits plans.'" *Pilot Life*, 481 U.S. at 47-48; *accord Shaw* 463 U.S. at 98 (preemption clause should not "be interpreted to preempt only state law dealing with the subject matters covered by ERISA – reporting, disclosure, fiduciary responsibility, and the like").

The Eleventh Circuit Court of Appeals has consistently held that state law claims including breach of contract, and tort claims such as fraud, bad faith, breach of fiduciary duty, and conversion are preempted by ERISA when such claims are "related to" an ERISA plan. *Sanson v. General Motors Corp.*, 966 F.2d 618, 620 (11th Cir. 1992), *cert. denied,* 507 U.S. 984 (1993) (state law claim for fraud preempted); *First Nat'l Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1549-50 (11th Cir. 1992), *cert. denied,* 506 U.S. 1079 (1993) (state law claims for breach of contract, bad faith and misrepresentation preempted); *Hoover v. Blue Cross and Blue Shield of Alabama*, 855 F.2d 1538 (11th Cir. 1988) (state law claims for breach of fiduciary duty preempted). The Eleventh Circuit also has recognized that "where state law claims of fraud and misrepresentations are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with an ERISA plan and its benefits system." *Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (fraud, misrepresentation, unfair claim settlement practices and promissory estoppel preempted); *see also Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186 (11th Cir. 1997) (tortious interference with contract claim based on failure to pay benefits preempted). The claims asserted by plaintiff have an obvious connection with the plan in this case because the claims are based on the alleged failure of United and HRI to provide benefits under the group health benefits plan and defendants' actions in seeking subrogation for benefits paid under the plan.

Plaintiff's state law claims against each defendant for unjust enrichment, breach of contract, money had and received, and breach of fiduciary duty arise out the alleged improper administration and management of the Plan's subrogation provisions.[1] To resolve these claims, the plan document will have to be reviewed and interpreted to determine whether defendants properly administered the plan's subrogation provisions. Thus, these state law claims all relate to the subject ERISA plan, within the meaning of 29 U.S.C. § 1144(a), and are preempted. *See Hall v. Blue Cross/Blue Shield Alabama,* 134 F.3d 1063 (11th Cir. 1998) (state law fraud claims preempted where terms of ERISA plan critical to resolution of claim); *Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040 (11th Cir. 1995) (state law claims preempted where claims centered on the issue of coverage under the plan); *see also Morstein v. National Insurance Services, Inc.*, 93 F.3d 715 (11th Cir. 1996), *cert. denied sub nom. Shaw Agency v. Morstein*, 519 U.S. 1092 (1997) (state law fraud claims against ERISA entity preempted).

Following the Supreme Court's opinion in *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358 (1999), judges of this court have taken contrary positions on whether bad faith claims are preempted by ERISA. *See Hill v. Blue Cross Blue Shield of Alabama*, 117 F. Supp.2d 1209 (N.D. Ala. 2000) (Acker, J.) (preempted); *Hird V. Bostrom Seating, Inc.*, 147 F. Supp.2d 1190 (N.D. Ala. 2001) (Buttram, J.) (preempted); *Gilbert v. ALTA Health and Life Insurance Company,* 122 F. Supp.2d 1267 (N.D. Ala. 2000), *reversed in pertinent part*, ___ F.3d ___, 2001 W.L. 1657170 (11th Cir., December 27, 2001) (Johnson, J.) (preempted); *Ellis v. Canada Life Insurance Co.*, 2001 W.L.

---

[1] Although HRI is neither a party to the agreement nor the plan administrator, ERISA still preempts the state law claims against HRI as well as United because "[t]he proper focus is not on the relationship between the parties but on the relationship between the alleged conduct and the refusal to pay benefits" or proceed with subrogation in the manner agreed upon in the contract. See *Garren v. John Hancock Mutual Life Inc., Co.*, 114 F.3d 186, 188 (11th Cir. 1997), citing *Morstein v. National Ins. Service,* 93 F.3d 715, 722 (11th Cir. 1996), *cert. denied*, 519 U.S. 1092 (1997).

1263660 (N.D. Ala. 2001) (Nelson, J.) (not preempted). In *Hill*, the Honorable William M. Acker, Jr. explained why *Amos v. Blue Cross Blue Shield of Alabama*, 868 F.2d 430 (11th Cir. 1989) (bad faith claim was preempted by ERISA) was no longer binding in light of *UNUM*:

> The court now reaches the conclusion that the Supreme Court has, since *Amos*, charted a course under which Mr. Hill can proceed with his state law claim in the forum which he chose. That new course was charted in *UNUM Life Insurance Company v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), in which the Supreme Court eliminated the previously existing doubt about the congressional intent in ERISA's so-called "savings clause," 28 U.S.C. § 1144(b)(2)(A). This provision reads in pertinent part:
>
>> **[N]othing in this sub-chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance**... (emphasis supplied).
>
> In *Ward*, a unanimous Supreme Court continued to recognize that ERISA preempts or supercedes state laws that "relate to any employee benefit plan;" but it just as fully and categorically recognized, and did not soft pedal, ERISA's express statutory exception that allows the enforcement of state laws, whether statutory or judge-made, when they **regulate insurance**. In *Ward*, the court looked at the court-created rule in California providing that a notice of claim that is late must cause substantial prejudice to the insurer before that lateness can be interposed by the insurer as a defense to the claim. It found that the rule was **saved** by § 1144(b)(2)(A), because it constituted a regulation of insurance.
>
> Two footnotes in the unanimous *Ward* decision reveal the Supreme Court's thinking about § 1144(b)(2)(A). The language used by the unanimous court in these footnotes does not tax the powers of comprehension or of deduction. The language is direct and straightforward. It speaks for itself, especially in the light of the Supreme Court's concurrent admonition

10

that readers of ERISA should "take a common sense view of the matter." 119 S.Ct. at 1386.

Footnote 6 reads as follows:
> We recognize that applying the States' varying insurance regulations creates disuniformities for "national plans that enter into local markets to purchase insurance." *Metropolitan Life*, 471 U.S. at 747, 105 S.Ct. 2380. As we have observed, however, "[s]uch disuniformities ... are the inevitable result of the congressional decision to 'save' local insurance regulation." *Ibid*.
> 119 S.Ct. at 1390.

Footnote 7 follows hard upon footnote 6. It reads in pertinent part:
> We discussed this issue in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). **That case concerned Mississippi common law creating a cause of action for bad faith breach of contract, law not specifically directed to the insurance industry and therefore not saved from ERISA preemption**.
> 119 S.Ct. at 1390 (emphasis supplied).

There is no way to read footnotes 6 and 7 in tandem except as an acknowledgment by the highest court that if Mississippi's cause of action for bad faith breach of an obligation to pay had been allowable only as to insurance policies, the action addressed in *Pilot Life* would have been saved from ERISA preemption by § 1144(b)(2)(A).

. . . .

To this court, the only question that remains is whether Alabama's cause of action for bad faith is limited to the insurance industry. This question is answered quickly in the affirmative by *American Cast Iron Pipe Co. v. Williams*, 591 So.2d 854, 857 (Ala. 1991), where the Supreme Court of Alabama held: "[W]e have consistently refused to extend the area of general contract law the tort of bad faith that we have

11

> recognized in the context of insurance policy cases." This holding is consistent with the fact that Alabama codified its common law tort of bad faith when it passed the Alabama Insurance Trade Practices Act, part of which is found at *Alabama Code* § 27-12-24, within the "insurance" title of the Code. The Supreme Court of Alabama has said absolutely nothing to suggest that a self-insured employer can be sued for bad faith by its employee-beneficiary, as if it were an insurance company. In other words, the only targets for the tort of bad faith in Alabama are insurance companies.
>
> . . . .
>
> This court is not a pioneer. Other courts have preceded it in finding that a state law tort claim of bad faith is exempt from ERISA preemption if limited to the insurance industry. Judge Holmes of the Northern District of Oklahoma in *Lewis v. Aetna U.S. Healthcare*, 78 F. Supp.2d 1202 (N.D. Okla. 1999), said exactly what this court is saying. So did chief Judge Matsch of the District of Colorado in *Hall v. UNUM Life Insurance Company*, CV 97-M-1828 (Nov. 1, 1999, unpublished). The laws of Oklahoma and Colorado, like the law of Alabama, limit the tort of bad faith to insurance. From *Pilot Life*, it was obvious that the law of Mississippi did not.

Recently Judge Nelson concluded that a state law claim for bad faith was preempted by ERISA:

> There are two types of ERISA preemption with which courts are concerned: complete preemption (or superpreemption) and defensive preemption. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999). "Superpreemption arises from Congress's creation of a comprehensive remedial scheme in 28 U.S.C. § 1132 for loss or denial of benefits." *Id*. Defensive preemption "originates in ERISA's express preemption provision, 28 U.S.C. § 1144(a)," which reads in pertinent part: "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws

insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title ...." 29 U.S.C. § 1144(a); *Id.*

A claim is completely preempted by ERISA "when the Plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a)." *Butero*, 174 F.3d at 1212 (internal quotations omitted). Such relief is available if four requirements are met: there is a relevant ERISA plan, the plaintiff has standing to sue under that plan, the defendant is an ERISA entity, and the complaint seeks compensatory relief akin to that available under 29 U.S.C. § 1132. *Id.* None of these four requirements is seriously in dispute in the present case. There is a relevant ERISA plan, plaintiff is a beneficiary under that plan and thus is entitled to sue under it, defendant is an ERISA entity, and the complaint seeks compensatory relief available under § 1132(a). *See id.* at 1213 (bad faith claim seeks to recover damages available under § 1132(a)). Therefore, plaintiff's bad faith claim is completely preempted by ERISA.

Turning to defensive preemption, plaintiff argues that her bad faith claim is saved from preemption because it falls within an exception to ERISA's defensive preemption statute. This exception states that the laws of a state that regulate insurance are not defensively preempted by ERISA. *See* 29 U.S.C. § 1144(b)(2)(A). Plaintiff notes the recent Supreme Court opinion in *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358 (1999), and points specifically to two recent Northern District of Alabama decisions that relied on *Ward* as authority for allowing bad faith actions within the ERISA context. These cases held that because the Alabama cause of action for bad faith is limited solely to the insurance industry, it is a law that regulates insurance and is therefore saved from preemption by ERISA. *See Hill v. Blue Cross Blue Shield of Ala.*, 117 F. Supp. 2d 1209 (N.D. Ala. 2000); *Gilbert v. Alta Health & Life Ins. Co.*, 122 F. Supp. 2d 1267 (N.D. 2000).

Whatever the merits of this argument, however, it fails to note the effect of complete preemption under

13

> ERISA. Simply put, just because a claim is based on a state law that regulates insurance and is not defensively preempted does not mean that the claim is not completely preempted by ERISA. As Chief Judge Albritton of the Middle District of Alabama has noted, "the savings clause alone cannot save Plaintiff's claim from preemption because Plaintiff's bad faith claim is subject to complete preemption under the civil enforcement provision of ERISA." *Hooper v. Albany International Corp.*, 149 F. Supp. 2d 1315, 1322 (M.D. Ala. 2001). Even if the Supreme Court's opinion in *Ward* altered the analysis of defensive preemption under ERISA, the Court expressly refused to reach the issue of complete preemption. *See Ward*, 526 U.S. at 376 n.7. Thus, Eleventh Circuit precedent regarding complete preemption remains unchanged. Because plaintiff's bad faith claim is superpreempted, it is necessarily defensively preempted. *Butero*, 174 F.3d at 1215.

*Ellis v. Canada Life Insurance Co.*, 2001 W.L. 1263660 (N.D. Ala. 2001).

The Eleventh Circuit Court of Appeals recently resolved the question of whether the Alabama tort of bad faith is preempted by ERISA subsequent to *UNUM Life Ins. v. Ward*. *Gilbert v. Alfa Health & Life Ins. Co.*, ___ F.3d ___, 2001 W.L. 1657170 (11th Cir. Ala.2001). The court considered the Alabama tort of bad faith under the two prong framework of *Pilot Life/Metropolitan Life*: (1) whether the law "regulates insurance" under a common-sense view and (2) whether the law "regulates insurance" under the McCarran-Ferguson factors.

The court concluded under a common sense view that the tort of bad faith does not regulate insurance because the cause of action it is not specifically directed toward the insurance industry but has its roots in the general principles of contract and tort law. In its discussion of the McCarran-Ferguson factors, the court concluded (1) that the tort of bad faith did not transfer or spread a policyholder's risk, (2) that the tort of bad faith is not an integral part of the policy relationship between the insured and the insurer because it does not define the terms of the

14

relationship but only allows, in certain circumstances of a breach of insurance contract, the policyholder to obtain punitive damages, and (3) that the tort of bad faith is not limited to entities within the insurance industry because the tort has developed from the general principles of contact and tort law. The *Gilbert* court concluded "The facts of this case are virtually identical to *Pilot Life*; we are bound to hold that Alabama's tort [of] bad faith refusal to pay is not saved from preemption by ERISA's savings clause."

The court determined the reasoning in *Hill v. Blue Cross Blue Shield of Alabama* was flawed, stating:

> First, in addressing the extent to which the Alabama tort is limited to or identified with the insurance industry, the *Hill* court failed to examine the "roots" of the Alabama tort. ... Second, the *Hill* court erroneously perceived footnote 7 in *Ward* as being in conflict with the Eleventh Circuit precedent involving the Alabama tort of bad faith. However, we see nothing in *Ward* that is inconsistent with our binding precedent, *Belasco* and *Amos*, or indeed with *Pilot Life*. In any event, it is clear from *Ward* that the language upon which the *Hill* court relied is dicta. Indeed, the *Ward* opinion did not discuss the congressional intent that ERISA's enforcement provisions be exclusive because the state law rule involved in *Ward* did not implicate the exclusivity of ERISA's enforcement scheme.
>
> Finally, and most importantly, the analysis conducted by the *Hill* court was flawed because of its total failure to consider "the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive." *Pilot Life*, 481 U.S. at 57, 107 S.Ct. at 1558. Unlike the state law rule at issue in *Ward*, the Alabama tort of bad faith at issue in *Hill* and at issue in this case does not implicate the exclusivity of ERISA's enforcement provisions in precisely the same manner as in *Pilot Life*.

Plaintiff's state law claims are due to be dismissed because these claims preempted by ERISA.

III. <u>Declaratory Judgment</u>

In Count VII of the Amended Complaint (document #8) plaintiff alleged that the certificate of insurance issued by defendant United to plaintiff states that United shall be subrogated to the plaintiff for benefits paid under the policy. Defendants argue that the subrogation provision contained in the HMO or Open Access Certificate of Coverage is the applicable provision. It is undisputed that all claims for medical services rendered to plaintiff under the plan and received by United were provided by participating providers under the plan's HMO coverage. (Dorsey Supplemental Declaration, ¶ 4). There were two certificates of insurance issued to plaintiff by United. When a non-participating physician provides services, medical insurance benefits were provided under the United HealthCare Plus Certificate of Medical Insurance. (Plaintiff's Exhibit A, p.ii). When a participating provider was used, medical benefits were provided under the United HealthCare of Alabama, Inc. Open Access Certificate of Coverage. ( *Id*.; Plaintiff's Exhibit B, unnumbered p.4). The amount of subrogation recovered under the two plans differed. The subrogation for benefits paid under the medical insurance policy to non-participating physicians would be "for benefits paid under the Policy." Conversely, the subrogation for benefits paid under the open coverage policy to participating physicians would be "for the reasonable value of services and benefits provided by the PLAN." The services here were provided by participating physicians. The subrogation is for the "reasonable value of services" as provided in the open access certificate of coverage. Plaintiff appears to acknowledge as much in his opposition brief when he maintains that "[m]aterial facts in this case are in dispute relating to the issue[s] of ... whether the Defendants collected the 'reasonable value of medical services based on its own actuarial determinations."

16

Assuming that plaintiff pursues his claims under ERISA, the issue of the "reasonable value of services" may be ripe for resolution.

Based on the foregoing, the defendants' Motion to Dismiss is due to be granted. The dismissal is without prejudice to plaintiff's right to file a new action asserting ERISA claims exhausting his available remedies under the plan.[2]

A separate judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 10th day of January, 2002.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

---

[2] Although plaintiff argues that he should not be required to exhaust his administrative remedies because "the subrogation authority vested in HRI satisfies the requirements to exhaust administrative remedies (Opposition, p.10), the fact that HRI aids in subrogation is not a substitute for plaintiff's obligation to initiate a grievance as provided by the group policy at pp.26-27. The Eleventh Circuit has "consistently stated that the exhaustion requirement applies both to actions to enforce a statutory right under ERISA and to actions to recover benefits under a plan." *Counts v. American General Life and Accident Insurance Company*, 111 F.3d 105, 109 (11th Cir. 1997).